Gary L. OLSON and Steven D. Olson, Plaintiffs and Appellants,

v.

MOLACEK BROTHERS OF CALLOWAY, MINNESOTA, and McDonald Livestock Company, Defendants and Appellees.

Civ. No. 10444.

Supreme Court of North Dakota.

Dec. 15, 1983.

---

Shelley Lashkowitz and James Evan White (argued), Fargo, for plaintiffs and appellants.

Ohnstad, Twichell, Breitling, Arntson & Hagen, West Fargo, for McDonald Livestock Co.

Dosland, Dosland & Nordhougen, Moorhead, Minn., and Irvine, Ramstad, Quam & Briggs, Detroit Lakes, Minn., for defendants and appellees Molacek Brothers, defendants and appellees; argued by Duane A. Lillehaug, Moorhead, Minn.

SAND, Justice.

The plaintiffs, Gary and Steven Olson (Olsons), appealed from a summary judgment granted in favor of the defendants, Molacek Bros. (Molaceks). Olsons had alleged that Molaceks sold them diseased cattle in violation of North Dakota statutory law.

Molaceks are cattle ranchers in Callaway, Minnesota. In January 1981 Molaceks discovered that one of their pregnant cows had aborted a calf fetus. Molaceks took the fetus to an animal laboratory at North Dakota State University for examination. Officials at the animal laboratory found that the fetus was aborted because the pregnant cow was inflicted with a contagious and infectious disease known as infectious bovine rhinotracheitis (IBR). Molaceks then vaccinated the remainder of the herd against the disease.

About one month later, on 18 February 1981, Molaceks consigned 110 of their cattle to McDonald Livestock Co., West Fargo, North Dakota. Olsons bought eighteen of those cattle two days later. All eighteen cattle were heifers. The Olsons neither received nor had actual notice that the cattle had been exposed to IBR when they purchased the cattle.

Between 1 March and 20 April, eight of the heifers that Olsons had purchased aborted their fetuses. Olsons sent several of the fetuses to the NDSU animal laboratory

and test results indicated that the abortions occurred because the cows were infected with IBR.

Olsons brought an action alleging that Molaceks [1] knowingly sold them diseased cattle in violation of North Dakota Century Code § 36–14–01. That section provides:

"No person shall sell, give away, or in any manner part with any animal infected with or suspected of being infected with any contagious or infectious disease, except as may be provided otherwise by the rules and regulations of the state livestock sanitary board. If any animal is known to have been infected with or exposed to any such disease within one year prior to such disposal, due notice of such fact shall be given in writing to the person receiving the animal."

Further, the remedy for violation of § 36–14–01 is provided in NDCC § 36–14–22. It states:

"Every person violating any of the provisions of this chapter shall be liable in a civil action to any person injured by such violation for all damages directly or indirectly suffered thereby."

In addition, NDCC § 36–14–21 provides for a penalty:

"Any person who shall knowingly violate any rule or regulation of the state livestock sanitary board, or who shall violate any provision of this chapter for which another penalty is not provided, shall be guilty of a class A misdemeanor."

Pursuant to NDCC § 36–14–22, Olsons alleged liability based upon negligence, strict liability, misrepresentation, and breach of express and implied warranties, and requested compensatory and exemplary damages.

On 16 February 1983 the Cass County district court entered an order dismissing with prejudice the Olsons' negligence, strict liability, implied and express warranties, and exemplary damage claims. The

court also dismissed without prejudice Olsons' claim for misrepresentation on the grounds that Olsons failed to comply with Rule 9(b), North Dakota Rules of Civil Procedure, by not stating with particularity the circumstances constituting the fraud. The court entered a final judgment as to fewer than all claims on 7 April. NDRCivP 54(b). Olsons acknowledged in their brief that the express warranty and misrepresentation claims are not before this Court.

In dismissing Olsons' claims for strict liability and negligence, the trial court reasoned that the provisions of the Uniform Commercial Code, specifically NDCC § 41–02–33(3)(e), preempted § 36–14–22 and, as a result, § 41–02–33(3)(e), which is narrower in scope, provided Olsons with their exclusive remedy. Section 41–02–33(3)(e) provides in part:

"3. Notwithstanding subsection 2:

.     .     .     .     .

"e. With respect to the sale of cattle, hogs, sheep, and horses, there shall be no implied warranty that cattle, hogs, sheep, and horses are free from sickness or disease at the time the sale is consummated, conditioned upon reasonable showing by the seller that all state and federal regulations pertaining to animal health were complied with."

The trial court, in effect, held that in considering the two statutes together, no strict liability claim was created by § 36–14–22 and that the Legislature's later enactment of the UCC was intended to provide a cattle buyer with an exclusive remedy. The issue before us, therefore, is whether NDCC § 36–14–22 is still operative or if it was preempted by the enactment of the UCC.

The appellant raised several issues but the overriding issue is whether or not the UCC and its various provisions apply and

---

**1.** McDonald Livestock Co. originally was a party defendant but was dismissed by the court on

McDonald's motion.

preempt the provisions of Ch. 36–14, NDCC, and particularly §§ 36–14–01 and 36–14–22.

A review of the pertinent provisions of the UCC and appropriate case law, together with references, will be beneficial.

NDCC § 41–02–02 (2–102) provides:

"Unless the context otherwise requires, this chapter applies to transactions in goods; it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction nor does this chapter impair or repeal any statute regulating sales to consumers, farmers, or other specified classes of buyers." [Emphasis added.]

The *Uniform Commercial Code* by Anderson, Vol. 1 (1981), contains no comment whatever under UCC § 2–102, which contains the identical language found in NDCC § 41–02–02 (2–102) underscored above. The language is clear and unambiguous and needs no explanation or comment. It does not state that a statute must be of a certain vintage or date.[2]

The underscored language above in NDCC § 41–02–02 (2–102) in essence provides that all of the provisions in NDCC Ch. 41–02 are subordinate to any statute regulating sales to farmers or consumers, or other specified classes of buyers. This gives full force and effect, as well as operational standing, to the provisions of NDCC Ch. 36–14 and the sections thereunder regulating sales to farmers which have been identified supra. This provision also means that the special statutes regulating sales to farmers may not legally be weakened or diminished.

In *Hoffman Motors, Inc. v. Enockson,* 240 N.W.2d 353, 355 (N.D.1976), regarding the sale to a farmer of a tractor which had

an "as is" disclaimer of any warranty, we said:

"This complete disclaimer is in accordance with § 41–02–33, NDCC (2–316, UCC), which allows for exclusion or modification of warranties. However, § 41–02–02, NDCC, states that Chapter 41–02 does not 'impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers.' Therefore § 51–07–07 is given full effect and the disclaimer provision in this case is void as it is in conflict with § 51–07–07, NDCC.

"This interpretation may make it impossible to include a complete disclaimer in a sales agreement for tractors and harvesting machiner but this is the effect of § 51–07–07."

However, in some instances where a void exists in the special statutory regulatory provisions relating to sales to farmers the provisions of the UCC could be applicable. But we need not and do not resolve that at this time.

The rationale in *Hoffman, supra,* regarding the meaning and effect of the underscored language in NDCC § 41–02–02, applies equally well to the instant case.

We said in *Hoffman, supra* at 355, that if the protection afforded by Ch. 36–14, NDCC, is inappropriate for modern, educated farmers, it is up to the Legislature, not the Court, to modify or repeal it.

■ Assuming, arguendo, that even if NDCC § 41–02–33(3)(e) were controlling, we nevertheless would have strong reservations that the Molacek Brothers legally established that "all state and federal regulations pertaining to the animal health were complied with" as required by § 41–02–33(3)(e). The term "state and federal regulations" necessarily includes statutes in addition to any rules. Section 36–14–01, in part, states:

---

**2.** The comments in *Uniform Commercial Code Commentary and Law Digest,* by Quinn, on page 2–6, regarding the decision in *Hoffman Motors Inc. v. Enockson,* 240 N.W.2d 353 (N.D.1976), are interesting. If Quinn believes dated law

should be ignored, relegated or cast aside, how then would Quinn treat the United States Constitution? It was not the opinion of the Supreme Court that gave life to the dated law, but rather the UCC itself (2–102).

"If any animal is known to have been infected with or exposed to any such disease within one year prior to such disposal, due notice of such fact shall be given in writing to the person receiving the animal."

To determine if this statute was complied with we need to examine the evidence submitted. The affidavit of Gary A. Christian, a partner of Stockyards Veterinary Service, West Fargo, consists of legal conclusions based primarily upon information furnished or obtained from Stockyards Veterinary Service rather than upon his personal knowledge. We are aware that, according to exhibit "A", Christian conducted an examination and signed the report, which is not necessarily descriptive of what was done. This is particularly true regarding the closing statement, number 6, stating "that at the time of the sale, to Stockyards Veterinary Services' knowledge, all state and federal regulations pertaining to animal health were complied with." The affidavit does not state facts supporting the legal conclusion in paragraph number 6. However, the affidavit of Gary Olson sets forth sufficient facts from which the legal conclusions can be drawn that the cattle were exposed to a contagious disease (IBR) within a year at the time they were consigned to the stockyards and Olson purchased them. Olson's affidavit states sufficient facts, if true, and we have no reason to question the veracity of the affidavit, from which a legal conclusion can be drawn that the Molaceks either knew, or should have known, that the cattle were either infected or exposed to a contagious disease which required Molaceks to comply with NDCC § 36–14–01.

In addition, the affidavits either raise, or leave unsolved, material questions of fact which appear to be in dispute and, as a result, findings of fact are necessary, making the matter inappropriate for summary judgment. *Albers v. NoDak Racing Club, Inc.*, 256 N.W.2d 355, 358 (N.D.1977).

We note that the sale of the cattle was made pursuant to a consignment agreement between McDonald Livestock Co. and Molaceks. As a general rule, the term "consignment," used in a commercial sense, imports an agency and denotes that property is committed to the consignee for care or sale.[3] *Parks v. Atlanta News Agency, Inc.*, 115 Ga.App. 842, 156 S.E.2d 137, 140 (1967); 15A C.J.S. *Consignment* 586–87 (1967). Nothing in the record indicates that McDonald Livestock Co. was anything more than a mere agent of Molaceks. The fact that the sale was made pursuant to a consignment, therefore, is not material to the issue before us.

We conclude that the UCC itself, by NDCC § 41–02–02 (2–102), gave full force and operational effect to NDCC Ch. 36–14.

The summary judgment is reversed and the matter is remanded for further proceedings in accordance with this opinion. The appellants, Olsons, are entitled to costs.

ERICKSTAD, C.J., and VANDE WALLE, PEDERSON and GIERKE, JJ., concur.

---

**3.** An annotation in 95 A.L.R.3d 484 contains, among other items, cases in which farmers were held merchants under the UCC, and farmers held not to be merchants. While this annotation and the subject of when a farmer is considered a merchant is of interest, it has no bearing on the basic proposition that sales to farmers and consumers are treated separately pursuant to NDCC § 41–02–02 (2–102) and NDCC Ch. 36–14.