**Ruth Parker WOOD, Plaintiff and Appellee,**

v.

**Darwin KRENZ, Arma Geophysical Company, a corporation of Casper, Wyoming, Petty-Ray Geophysical, a division of Geosource, Inc., a corporation of Houston, Texas, Petroleum Geophysical Corporation of Englewood, Colorado, and Seis-Pros, Inc., a corporation of Houston, Texas, Defendants and Appellants.**

Civ. No. 11,128.

Supreme Court of North Dakota.

Aug. 20, 1986.

Harris P. Kenner of Kenner Law Firm, Minot, for plaintiff and appellee.

Fred E. Whisenand of McIntee & Whisenand, Williston, for defendant and appellant Darwin Krenz.

Donald L. Peterson of McGee, Hankla, Backes & Wheeler, Minot, for defendants and appellants Arma Geophysical Co., Petroleum Geophysical Corp., and Seis-Pros, Inc.

Gary D. Ramsey of Greenwood, Greenwood & Greenwood, Dickinson, for defendant and appellant Petty-Ray Geophysical.

VANDE WALLE, Justice.

This is an appeal from a judgment awarding damages to Ruth Parker Wood for seismographic activities on her land. We reverse and remand for a new trial.

Wood owns land in Williams County. From 1966 to 1983, Wood leased approximately 5,000 surface acres to Darwin Krenz for agricultural purposes. All oil and gas rights and mineral rights were reserved to Wood and others who held interests in those rights.

During 1979, 1980, and 1981, seismographic exploration was conducted on the property by Arma Geophysical Company, Petty-Ray Geophysical, Petroleum Geophysical Corporation, and Seis-Pros, Inc. [hereinafter "the companies"]. The companies secured Krenz's permission to conduct these activities, but Wood was never contacted or notified that exploration was occurring. The companies paid Krenz over $35,000 pursuant to their negotiations.

Wood commenced this action against Krenz and the companies alleging unjust enrichment and seeking to recover a portion of the amount paid by the companies for the right to conduct seismographic activities on the land. The case was tried to the court. After taking the case under advisement, but without consulting the parties or counsel, the trial court telephoned Otto Bervik of the State Land Department to inquire about that agency's policy with respect to collection of seismic damages on leased State lands. As demonstrated by its memorandum opinion, the court clearly relied upon the information provided by Bervik to dispute Krenz's contention that it was customary for the surface tenant to receive all payments for seismographic exploration:

> "The Court does not agree with either statement and took it upon itself to call the State Land Department. The Court talked to Mr. Bervig (sic) whom I am sure all the attorneys know. He stated that the Land Department has always shared surface damages for seismograph work and at the present time its policy is to charge $50 per shot hole or to demand one-half of all damages paid for seismographing, whichever is the most."

In addition, the court in its memorandum opinion took judicial notice, based upon the judge's experience in private practice, that it was customary for seismographic companies to contact both the landlord and tenant before conducting seismographic activities on leased land and to split the payments between them:

> "The Court, I believe, can also take judicial notice of the custom in the area in having practiced in the oil patch for 30 years, 28 of which was after the 1951 Clarence Iverson Well was drilled, and have a working knowledge of the customs. Usually a seismograph company would contact both the tenant and the surface owner; the latter two would

work out an agreement how the damages would be paid. If they could not agree, the damages would be paid to both of them and the check would be written with both names on the same check. It is the Court's opinion that these seismograph companies operated very carelessly when they gained permission only from Mr. Krenz to work on this property. That type of action is not normal and the interrogatories verify that statement."

The trial court awarded Wood damages totaling one-half of the amount paid by the companies to Krenz. Judgment was entered accordingly, and Krenz and the companies appeal.[1]

The following issues are dispositive of this appeal:

I. Is Chapter 38–11.1, N.D.C.C., applicable?

II. Did the trial court err in contacting Bervik and relying upon his unsworn "testimony"?

III. Did the trial court err in taking judicial notice of a custom of splitting seismographic exploration payments between landlord and tenant?

## I

█ Krenz and the companies contend that reversal of the judgment is required because the trial court misinterpreted Chapter 38–11.1, N.D.C.C., in reaching its decision in this case. They contend that Chapter 38–11.1 governs this case and requires that seismographic damages be paid to the

tenant of the surface estate, not the landlord. The trial court held that Chapter 38–11.1 was applicable, but apparently held that the damages payable thereunder must be divided between the surface tenant and landlord if their lease does not make specific provisions for seismographic damages payments.

The provisions of Chapter 38–11.1 require a "mineral developer" to compensate the surface owner or tenant for agricultural losses caused by the developer's drilling operations.[2] Section 38–11.1–03(3), N.D.C.C., defines "mineral developer":

"3. 'Mineral developer' means the person who acquires the mineral estate or lease for the purpose of extracting or using the minerals for nonagricultural purposes."

Krenz and the companies have conceded that the record contains no evidence which establishes that the companies fall within this definition of "mineral developer," nor any evidence that they were working for a "mineral developer." A party claiming the benefits of a statute has the burden of establishing a sufficient factual basis to support invocation of the statute. Cf. *Knoff v. American Crystal Sugar Co.*, 380 N.W.2d 313 (1986). Thus, because Krenz and the companies concede that the record is devoid of evidence establishing a factual basis for invoking the statute, Chapter 38–11.1 is inapplicable and we need not address the trial court's interpretation of the statute.[3]

1. The notice of appeal filed by Petty-Ray Geophysical states that appeal is taken from the "Judgment herein dated October 29, 1985." However, the judgment was dated and entered on October 8, 1985; the notice of entry of judgment served by Wood upon Petty-Ray Geophysical was dated October 29, 1985. Because this is clearly a clerical error in the notice of appeal, we will treat the appeal as being from the October 8, 1985, judgment. See *Storebo v. Foss*, 325 N.W.2d 223 (N.D.1982).

2. Wood contends that Chapter 38–11.1, N.D.C.C., does not apply to this action because at the time of the seismographic activities involved here the statutory definition of "drilling operations" did not include seismographic activities. Compare § 38–11.1–03(2), N.D.C.C. (1980), with

§ 38–11.1–03(2), N.D.C.C. (Supp.1985). Because we conclude that Chapter 38–11.1 is inapplicable on other grounds, we need not address this issue.

3. Our determination that Chapter 38–11.1 does not apply on the record before us is not entirely dispositive of this case. Although Krenz and the companies may not rely upon the provisions of Chapter 38–11.1 to attack the judgment on appeal, they have in their pleadings raised other defenses to Wood's action which require that we consider the additional issues raised on appeal.

Because we reverse and remand for a new trial on other grounds, we wish to make it clear that our holding in this case does not preclude Krenz and the companies from introducing evidence upon retrial to establish the companies'

## II

■ Krenz and the companies contend that the court erred in contacting Bervik after trial and relying upon Bervik's unsworn "testimony."

It is obvious that the court's unsolicited contact of a new "witness" after trial, without the knowledge or participation of the parties, and the subsequent reliance upon the unsworn "testimony" to resolve factual issues in the case is highly prejudicial error which requires reversal. One of the fundamental precepts of our judicial system is that the finder of fact must rely only on the evidence presented in court. We have developed comprehensive rules regulating procedures and admissibility of evidence, all concerned with ensuring that trials are conducted fairly and that evidence submitted meets threshhold indicia of reliability. These fundamental principles are ignored when a finder of fact goes outside the record and conducts its own informal investigation of factual matters without knowledge of the parties.

■ If the trial court believed that Bervik's testimony was necessary to a determination of the case, Rule 614 of the North Dakota Rules of Evidence provided the appropriate procedure for securing his testimony. Rule 614 allows the court discretion to call and interrogate witnesses. The rule, however, clearly allows the court to call the witness to testify only on the record under oath, and specifically provides that all parties are entitled to cross-examine the witness. The procedure employed by the court in this case was well beyond its authority under Rule 614.

We conclude that the trial court committed reversible error when it contacted Bervik and subsequently relied on his unsworn "testimony" in resolving factual issues in this case.

## III

■ ■ Krenz and the companies also contend that the court erred in taking judicial notice of a custom in the area pertaining to distribution of seismographic-exploration payments to surface tenants and landlords.

Judicial notice is governed by Rule 201 of the North Dakota Rules of Evidence, which states in pertinent part:

> "(b) Kinds of Facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

As the explanatory note to Rule 201 points out, judicial notice is to be taken only of facts "that are clearly beyond dispute." The function of the rule "is to remove from the stricture of formal proof facts that are not subject to reasonable dispute." *Hadland v. Schroeder*, 326 N.W.2d 709, 713 (N.D.1982).

In this case, there was evidence in the record of practices employed by seismographic companies in Williams County when the surface estate was under lease. Indeed, the court in taking judicial notice made reference to interrogatories which purportedly supported the court's judicially noticed custom. However, these interrogatories, submitted by five different seismographic companies engaged in operations in Williams County, established that each had a different policy or practice in dealing with seismographic activities on leased land. This militates against a conclusion that there was a uniform custom practiced within the area, and certainly raises a dispute which precludes the taking of judicial notice. We conclude that under the facts presented in this case the existence of the "custom" judicially noticed by the trial court is not a fact "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be ques-

status as mineral developers under Chapter 38– 11.1.

tioned." Judicial notice was therefore inappropriate.[4]

We reverse the judgment of the district court and remand for a new trial.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.

---

4. Wood contends that Krenz and the companies waived their objection to the court's consideration of the Bervik conversation and the taking of judicial notice when they failed to present additional evidence or attempt to cross examine Bervik when Wood made a post-trial motion to re-open the record. Although Krenz and the companies opposed Wood's motion to re-open the record, it must be noted that the trial court, in a letter to all counsel regarding re-opening of the record, had already stated: "My decision has been made and it probably won't be changed." In view of the trial court's express statement that his decision "probably" wouldn't be changed, and because the court took judicial notice of a custom based upon the judge's personal experience while in private practice, it is certainly understandable that Krenz and the companies envisioned no purpose to be served by re-opening the record. Although we recognize the policy which encourages giving a trial court an opportunity to correct its errors [see *City of Mandan v. Mi-Jon News, Inc.,* 381 N.W.2d 540 (N.D.1986)], the tone set by the trial court in this case clearly indicated that the court was not likely to seriously consider changing its decision. In effect, the court had placed a heavy burden upon Krenz and the companies to convince the court that it was wrong. We conclude that, under the circumstances presented in this case, their opposition to Wood's motion to re-open did not constitute a waiver by Krenz and the companies of their right to raise this issue on appeal.