**FARMERS LIVESTOCK EXCHANGE OF BISMARCK, INC., Plaintiff and Appellant,**

v.

**Randy ULMER and Russell Ulmer, d/b/a Ashley Livestock Exchange, Defendants and Appellees.**

Civ. No. 11117.

Supreme Court of North Dakota.

Sept. 2, 1986.

Vogel Law Firm, Mandan, for plaintiff and appellant; argued by Jos. A. Vogel, Jr.

Fleck, Mather, Strutz & Mayer, Bismarck, for defendants and appellees; argued by Daniel L. Hovland.

LEVINE, Justice.

The Farmers Livestock Exchange of Bismarck, Inc., appeals from a district court judgment dismissing its action against Randy and Russell Ulmer d/b/a Ashley Livestock Exchange. We hold that Section 36–05–12, N.D.C.C., [Operator to warrant title to purchaser—Dispute in title of animal sold], takes priority over Section 41–02–48, N.D.C.C., [U.C.C. § 2–403, Power to transfer—Good faith purchase of goods—Entrusting]; that Section 36–05–12, N.D.C.C., was not intended to permit a livestock auction market to recover the net proceeds from the sale of cattle unless it was the "rightful owner" of the cattle; that Ashley Livestock was not a buyer in the ordinary course of business or a good faith purchaser for value; and that the trial court did not err in applying equitable principles. We therefore affirm.

On October 4, 1983, David Bernhardt, a cattle buyer licensed in North Dakota, purchased 53 head of cattle from Farmers Livestock. Bernhardt bought and paid for 5 head of cattle for himself and falsely represented to Farmers Livestock that he was purchasing the remaining 48 head of cattle on consignment for Herman Peopple and Gene Rudolph. The custom of Farmers Livestock and other auctions was to permit the person for whom cattle were purchased on consignment to pay for them after delivery. Bernhardt signed an invoice indicating that 48 head of cattle were purchased on consignment for Rudolph and Peopple. Bernhardt then obtained brand releases in his name for all 53 head of cattle from the Brand Inspector for the North Dakota Stockmen's Association. Brand releases are generally given in the name of the person for whom the cattle are purchased on consignment. Thereafter, Bernhardt had the cattle shipped to the Ashley Livestock Exchange.

Bernhardt had previously paid Randy Ulmer approximately $26,000 by check to sat-

isfy an account owed by Bernhardt to Ashley Livestock. Bernhardt asked Ulmer to hold the check until October 4, 1983; however, on that date, there were insufficient funds in Bernhardt's account to cover the check. On October 5, 1983, Bernhardt met with Russell and Randy Ulmer's father, Edgar, to discuss payment of Bernhardt's account. Edgar Ulmer requested that Bernhardt apply the proceeds from the sale of the 53 head of cattle to his account at Ashley Livestock, and Bernhardt agreed. Ashley Livestock sold the 53 head of cattle at its October 5, 1983 sale and issued a check in the amount of $18,397.61 to Bernhardt who executed a certificate of ownership indicating that he owned the cattle and there were no liens on them. Bernhardt endorsed the check, and it was applied to his account with Ashley Livestock.

Bernhardt subsequently pleaded guilty to theft of property, and, contingent upon that plea, he executed a confession of judgment. He has since filed for bankruptcy.

Thereafter, Farmers Livestock commenced the instant action against Ashley Livestock pursuant to Section 36–05–12, N.D.C.C., seeking the proceeds from the sale of the 48 head of cattle, $17,031.74. After a bench trial, the district court determined that Section 41–02–48, N.D.C.C. [Uniform Commercial Code § 2–403], was applicable to the action and, pursuant to that statute, Ashley Livestock took good title from Bernhardt and was entitled to keep the proceeds from the sale of the cattle which Bernhardt had applied to his account with Ashley. The district court found that Ashley Livestock had no reason to believe that anyone other than Bernhardt owned the cattle and that Bernhardt had voluntarily agreed to apply the proceeds from the sale to his account with Ashley Livestock. The district court also determined that both Farmers Livestock and Ashley Livestock were innocent parties but that Farmers Livestock's conduct enabled Bernhardt to perpetrate the fraud and, therefore, Farmers Livestock should bear the loss. Judgment was entered dismissing Farmers Livestock's complaint, and it has appealed.

Farmers Livestock asserts that it was the "rightful owner" entitled to the proceeds from the sale of the cattle and contends that the trial court erred in concluding that Section 36–05–12, N.D.C.C., was not applicable to its action. Section 36–05–12, N.D.C.C., provides:

"*36–05–12. Operator to warrant title to purchaser—Dispute in title of animal sold. The operator of each livestock auction market* shall warrant to the purchaser the title of all livestock bought by him through such auction market and *shall be liable to the rightful owner of any livestock sold through the auction market for the net proceeds in cash received therefor.* If the operator of an auction market is notified by an authorized brand inspector that there is a question as to whether or not any designated livestock sold through such auction market is lawfully owned by the consignor thereof, such operator shall hold the proceeds received from the sale of the livestock for a reasonable time, not to exceed sixty days, to permit the consignor to establish ownership. At the expiration of such time, if the consignor fails to establish his lawful ownership of the livestock to the satisfaction of the brand inspector, the proceeds shall be paid into the estray fund in accordance with the provisions of chapter 36–22." [Emphasis added.]

Ashley Livestock counters that the district court properly concluded that Section 41–02–48, N.D.C.C. [U.C.C. § 2–403], governed the transaction and permitted it to take good title from Bernhardt.

Section 41–02–48, N.D.C.C. [U.C.C. § 2–403] is part of Article 2 of the U.C.C. dealing with transactions in goods. The scope of Article 2 of the U.C.C. is defined in Section 41–02–02, N.D.C.C. [U.C.C. § 2–102]:

"*41–02–02. (2–102) Scope—Certain security and other transactions excluded from this chapter.* Unless the context otherwise requires, this chapter applies to transactions in goods; it does not

apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction *nor does this chapter impair or repeal any statute regulating sales to consumers, farmers, or other specified classes of buyers."* [Emphasis added.]

We have previously applied Section 41–02–02, N.D.C.C. [U.C.C. § 2–102], to give full force and effect to statutes regulating sales to consumers, farmers, or other specified classes of buyers where those statutes conflict with provisions in Article 2 of the U.C.C. *Olson v. Molacek Brothers of Calloway, Minn.,* 341 N.W.2d 375 (N.D.1983); *Hoffman Motors, Inc. v. Enockson,* 240 N.W.2d 353 (N.D.1976). In *Olson, supra,* we recognized that some provisions of Article 2 of the U.C.C. may supplement statutes regulating sales to farmers, consumers, or other specified classes of buyers if the statutes are not in conflict and each can be given effect. *See also Cugnini v. Reynolds Cattle Co.,* 687 P.2d 962 (Colo. 1984); *Security Pacific National Bank v. Goodman,* 24 Cal.App.3d 131, 100 Cal.Rptr. 763 (1972).

■ In the instant case, Section 36–05–12, N.D.C.C., involves sales to farmers and other specified classes of buyers within the meaning of Section 41–02–02, N.D.C.C. [U.C.C. § 2–102], and has not been impaired or repealed by Section 41–02–48, N.D.C.C. [U.C.C. § 2–403].[1] We conclude that the specific language of Section 36–05–12, N.D.C.C., must be given effect by virtue of Section 41–02–02, N.D.C.C. [U.C.C. § 2–102], and that Article 2 of the U.C.C. may supplement that specific statute only if there is no conflict and each can be given effect.

Thus, the narrower issue is whether Farmers Livestock is the "rightful owner" of the 48 head of cattle within the meaning of Section 36–05–12, N.D.C.C.

■ Section 36–05–12, N.D.C.C., is part of a statutory scheme regulating livestock auction markets. There is no doubt that that regulation is designed to protect the public and, in particular, buyers and sellers at livestock auction markets. The specific language of Section 36–05–12, N.D.C.C., makes the operator of a livestock auction liable to the "rightful owner" for the net cash proceeds received for livestock sold through the operator's auction. That statute speaks in terms of whether designated livestock is "lawfully owned" by the consignor and provides contingencies for the failure of a consignor to establish lawful ownership. The plain language of the statute indicates that it was intended to protect the rightful or lawful owner of the livestock from theft or fraudulent conduct and to ensure that the rightful or lawful owner realizes the net proceeds for livestock sold through a livestock auction market. We believe that the language of the statute indicates that it was not intended to protect livestock auction markets unless the auction market establishes that it is the rightful or lawful owner of the livestock.

■ During oral argument to this Court, Farmers Livestock conceded that the cattle had been consigned to it by a third party. However, the circumstances of that consignment were not developed before the trial court. Ordinarily when goods are consigned by a consignor, possession passes to the consignee and title remains in the consignor. *Coverdell v. Erickson,* 39 N.D. 579, 168 N.W. 367 (1918). *See* 32 Am.Jur.2d, Factors and Commission, § 10 (1982). There is nothing in the record to establish that Farmers Livestock received anything other than possession of the 48 head of livestock on consignment, and, based on that record, we conclude that Farmers Livestock has not established that it was the "rightful owner" of the 48 head of cattle within the meaning of Section 36–05–12, N.D.C.C., and therefore has not established that it was within the class of

---

**1.** Further support for the proposition that Section 36–05–12, N.D.C.C., has not been repealed by Article 2 of the U.C.C. is the cross-reference to Chapter 36–05, N.D.C.C., in Section 41–02–45, N.D.C.C. [U.C.C. § 2–328] [Sale by Auction].

persons intended to be protected by that statute. *See Wood v. Krenz,* 392 N.W.2d 395 (N.D.1986); *Keyes v. Amundson,* 391 N.W.2d 602, (N.D.1986).

Nor do we believe that Farmers Livestock may be subrogated to or step into the shoes of the rightful owner. Subrogation is an equitable remedy available to secure the ultimate discharge of debt by a person who, in equity and good conscience, ought to pay that debt. *St. Paul Fire & Marine Ins. Co. v. Amerada Hess Corp.,* 275 N.W.2d 304 (N.D.1979). Subrogation involves weighing and balancing the equities of the parties and may not be invoked to the injury of innocent third persons. *See* 73 Am.Jur.2d, Subrogation, §§ 15, 17 (1974). In the instant case, the trial court determined that Ashley Livestock acted in good faith and had no reason to believe that anyone other than Bernhardt owned the cattle. The trial court also determined that Farmers Livestock's conduct enabled Bernhardt to perpetrate fraud. We believe that permitting Farmers Livestock to step into the shoes of the "rightful owner" not only would subject an innocent third party to a loss which, in equity and good conscience, ought to be paid by Farmers Livestock but also would allow recovery to a party whom Section 36–05–12, N.D.C.C., was not intended to protect.

We conclude that Section 36–05–12, N.D.C.C., does not resolve the rights and liabilities of the parties under the facts of this case. Thus, we may look to the provisions of Article 2 to supplement that statute and to determine the rights and liabilities of Farmers Livestock and Ashley Livestock.

Section 41–02–48, N.D.C.C. [U.C.C. 2–403], provides:

"*41–02–48. (2–403) Power to transfer—Good faith purchase of goods—Entrusting.*

"1. A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase, the purchaser has such power even though:

"a. The transferor was deceived as to the identity of the purchaser;

"b. The delivery was in exchange for a check which is later dishonored;

"c. It was agreed that the transaction was to be a 'cash sale'; or

"d. The delivery was procured through fraud punishable as theft under chapter 12.1–23.

"2. Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

"3. 'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery of acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be theft under chapter 12.1–23.

"4. The rights of other purchasers of goods and of lien creditors are governed by the chapters on secured transactions (chapter 41–09), bulk transfers (chapter 41–06), and documents of title (chapter 41–07)."

The district court determined that Subsections (2) and (3) of that statute, the "entrustment" provisions, were applicable to Farmers Livestock's action and gave Ashley Livestock good title to the cattle and to the proceeds. We disagree.

In order to come within the entrustment provisions of Subsection 2, Ashley Livestock must qualify as a buyer in the ordinary course of business. Section 41–01–11(9), N.D.C.C. [U.C.C. § 1–201(9)], defines a buyer in the ordinary course as follows:

"9. 'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to

him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. All persons who sell minerals or the like (including oil and gas) at wellhead or minehead shall be deemed to be persons in the business of selling goods of that kind. *'Buying' may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a preexisting contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt."* [Emphasis added.]

That definition makes clear that buying in the ordinary course of business requires "new value" to be given. *United States v. Handy & Harman*, 750 F.2d 777 (9th Cir. 1984); *Shacket v. Philko Aviation, Inc.*, 681 F.2d 506 (7th Cir.1982); *see* 3A Bender's U.C.C. Service, Duesenberg & King, Sales and Bulk Transfers § 10.06[3][ii]; Annot., 87 A.L.R.3d 11 (1978).

■ In the instant case, Ashley Livestock paid Bernhardt with a check, and he endorsed that check over to Ashley Livestock to satisfy his account. The result of that transaction was that Ashley Livestock reduced an antecedent debt. By paying Bernhardt with a check and accepting it back in partial satisfaction of his account, Ashley Livestock may not assert that it has given "new value" and, consequently, does not qualify as a buyer in the ordinary course of business. *Sherman v. Roger Kresge, Inc.*, 67 Misc.2d 178, 323 N.Y.S.2d 804 (1971); *aff'd,* 40 A.D.2d 766, 336 N.Y. S.2d 1015 (1972). Even without reference to value, we do not believe that an auctioneer, sales agent, commission merchant, broker, or the like who merely sells cattle on behalf of another while acquiring a mere possessory interest in the cattle qualifies as a buyer. *See Toyomenka, Inc. v. Mount Hope Finishing Co.*, 432 F.2d 722 (4th Cir.1970); *Commercial Bank at Alma*

*v. Hales*, 281 Ark. 439, 665 S.W.2d 857 (1984).

However, the trial court also determined that Ashley Livestock was a good faith purchaser for value of the cattle which permitted it to take good title from a person with voidable title pursuant to Section 41–02–48(1), N.D.C.C. [U.C.C. § 2–403(1)].

■ The value required for a good faith purchaser for value includes the cancellation of preexisting debt which thus distinguishes it from the new value required for a buyer in the ordinary course of business. *Compare* Section 41–01–11(44), N.D.C.C. [U.C.C. § 1–201(44)], with Section 41–01–11(9), N.D.C.C. [U.C.C. § 1–201(9)]. However, in order to qualify as a good faith purchaser for value, Ashley Livestock must also take by "purchase" which is defined in Section 41–01–11(32), N.D.C.C. [U.C.C. § 1–201(32)] as follows:

"32. 'Purchase' includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift, or any other voluntary transaction creating an interest in property."

Purchase is generally given a broad meaning under the U.C.C.; however, we agree with the rationale expressed by the United States District Court of Kansas that in the absence of any property interest on the part of the auctioneer, mere possession of the cattle by the auctioneer does not meet the definition of a "purchaser" in Section 41–01–11(32), N.D.C.C. [U.C.C. § 1–201(32)]. *First Nat. Bank of Amarillo v. Southwestern Livestock, Inc.*, 616 F.Supp. 1515 (D.Kan.1985); *see Commercial Bank at Alma v. Hales*, 281 Ark. 439, 665 S.W.2d 857 (1984); *see also* 3A Bender's U.C.C. Service, Duesenberg & King, Sales and Bulk Transfers § 10.06[1].

■ We conclude that Section 41–02–48, N.D.C.C. [U.C.C. § 2–403], is not determinative of the instant action and, under these circumstances, we may supplement the provisions of the U.C.C. with principles of equity. Section 41–01–03, N.D.C.C. [U.C.C. § 1–103]; *Toyomenka, Inc. v.*

*Mount Hope Finishing Co.,* 432 F.2d 722 (4th Cir.1970).

In the instant case, the trial court's findings of fact and conclusions of law provide:

"That it is a rule of long-standing that where one of two innocent persons must suffer by the acts of a third, the one whose conduct, act, or omission enables such third person to occasion the loss must sustain it if the other party acted in good faith without knowledge of the facts and altered his position to his detriment. *See Jordan v. Butler* [182 Neb. 626], 156 N.W.2d 778 (Neb.1968). That in the present situation, both Farmers Livestock Exchange of Bismarck, Inc., and the Ashley Livestock Exchange are innocent parties whose positions have been altered by the criminal acts of David Bernhardt. Nevertheless, the Ashley Livestock Exchange purchased the 48 head of cattle from David Bernhardt in good faith and without knowledge that the sale was in violation of the ownership rights or security interests of Farmers Livestock Exchange of Bismarck, Inc., and under the circumstances, the plaintiff should bear the loss."

The trial court's decision was based on a variation of the equitable maxim that "[w]hen two innocent persons must suffer by the act of a third, he by whose negligence it happened must be the sufferer." Section 31–11–05(34), N.D.C.C.; *Hartford Accident & Indemnity Co. v. Anderson,* 155 N.W.2d 728 (N.D.1968); *Hoffer v. Crawford,* 65 N.W.2d 625 (N.D.1954).

In the instant case, the trial court made a finding of fact that Ashley Livestock had no reason to believe that Bernhardt was not the lawful owner of the cattle and that Bernhardt had voluntarily agreed to apply the proceeds from the sale to his account with Ashley Livestock. Those findings support the trial court's decision and are not clearly erroneous pursuant to Rule 52(a), N.D.R.Civ.P. There was nothing to prevent Farmers Livestock from taking precaution to verify the consignment purchase, refuse the extension of credit, or notify the Brand Inspector that the cattle were bought on consignment. We conclude that the trial court did not err in determining that as between Farmers Livestock and Ashley Livestock, Farmers Livestock must bear the loss.

Accordingly, the district court judgment dismissing Farmers Livestock's complaint is affirmed.

ERICKSTAD, C.J., MESCHKE, J., NEUMANN, District Judge, and ILVEDSON, Senior Judge, concur.

ILVEDSON, Senior Judge, and NEUMANN, District Judge, sitting in place of GIERKE, J., and VANDEWALLE, J., disqualified.