BISCHOFF REALTY, INC.,
Defendant–Appellant,

v.

Emory LEDFORD and Irene Ledford,
Plaintiffs–Appellees.

No. 24A01–9005–CV–184.

Court of Appeals of Indiana,
First District.

Nov. 29, 1990.

William L. Soards, Soards & Fruechten-icht, Indianapolis, and Melvin F. Wilhelm, Barrett & Wilhelm, Brookville, for defendant-appellant.

Douglas C. Wilson, Greenman, Kellerman & Wilson, Batesville, for plaintiffs-appellees.

BAKER, Judge.

Defendant-appellant Bischoff Realty, Inc. (Bischoff) appeals the trial court's denial of its motion for summary judgment which ultimately led to a jury verdict and judgment in favor of plaintiff-appellees Emory and Irene Ledford, husband and wife (the Ledfords), in their action sounding in deceit. The issues squarely before us are twofold: first, whether a prospective real estate purchaser may rely on equivocal statements by the seller's agent; second, whether a judgment on the merits for a principal, in an action founded on

alleged misrepresentations by its agent acting within the scope of the agent's authority, entitles the agent to judgment as well. We reverse.

Bischoff challenges the judgment on several grounds. Because we agree, however, that the trial court erred in not granting Bischoff's motion for summary judgment based on principles of agency law, we need not address Bischoff's arguments concerning the subsequent proceedings.

## FACTS

In the spring of 1985, the Ledfords approached Melvin Hill, a Bischoff agent, in their search for a new home. Hill agreed to show them some homes, and drove the Ledfords to a property he thought would be suitable. On the way, they stopped at the property which is the underlying subject matter of this dispute. Bischoff had just been retained by the property's owner, Merchants Bank & Trust Company (the Bank), as sales agent, and Hill was going to put a "for sale" sign in the yard.

The Ledfords decided they were interested in the property and asked Hill to show it to them. While walking around the property, the Ledfords asked Hill to show them the boundaries. Hill responded that Bischoff had just received the listing from the Bank, and that he was unsure of any specific details about the property. He nonetheless attempted to show the Ledfords the boundaries, making estimates based on a single observable survey stake, patterns of lawn mowing, and the location of the driveway and garage. Hill estimated the parcel contained roughly three quarters of an acre, but he did not definitively delineate the boundaries, and he did not say he was certain of his estimates.

The Ledfords purchased the property on June 20, 1985. Several months later, they learned from a neighbor that part of what they thought was their yard was actually the neighbor's property. After investigating the neighbor's claim and learning of its truth, the Ledfords brought this suit against the Bank as seller and Bischoff as the seller's agent. They claimed Hill's estimates of the property's boundaries were material misrepresentations of fact which they relied on to their detriment. The Bank moved for summary judgment on the grounds that the pleadings, answers, depositions, and affidavits showed no genuine issue of material fact. The Bank argued Hill had given only equivocal statements regarding the boundary lines upon which the Ledfords were not entitled to rely. The trial court, without entering any specific findings or conclusions, granted the motion and entered summary judgment for the Bank. The Ledfords did not appeal.

Bischoff then moved for summary judgment on agency grounds, arguing that the principal's discharge mandated the agent's discharge. The court denied the motion and the cause proceeded to trial.

## DISCUSSION AND DECISION

### I

■ We turn first to the procedural aspects of the denial of Bischoff's motion for summary judgment. When reviewing the disposition of a motion for summary judgment, we use the same standards as the trial court and review the pleadings, depositions, affidavits, answers to interrogatories, and admissions in the light most favorable to the non-moving party. *Hatton v. Fraternal Order of Eagles Aerie No. 4097* (1990), Ind.App., 551 N.E.2d 479, *trans. denied.*

To sustain its motion for summary judgment, Bischoff was required to show an absence of any genuine issue of material fact concerning two questions: 1) whether Hill recklessly or knowingly made a material misrepresentation of a past or existing fact, and 2) whether the Ledfords relied on the representation to their detriment. *Plymale v. Upright* (1981), Ind.App., 419 N.E.2d 756. At the time of Bischoff's motion for summary judgment, the evidence most favorable to the Ledfords showed Bischoff had met its burden.

■ First, the Ledfords conceded that Hill's statements about the boundaries were equivocal. Hill "said he thought, he didn't know for sure, he didn't think, but he said it [the boundary line] probably went to

that stake, you know, like that, that was the boundary." *Record* at 58 (Deposition of Emory Ledford at 12). To have the force and effect of a fraudulent misrepresentation, a representation must be unqualified. *Kirkpatrick v. Reeves* (1889), 121 Ind. 280, 22 N.E. 139; *Vernon Fire & Cas. Ins. Co. v. Thatcher* (1972), 152 Ind.App., 692, 285 N.E.2d 660, *reh'g. denied*, 152 Ind.App. 692, 713, 287 N.E.2d 776, *trans. denied*. The statement above, like Hill's other statements, was hedged in with disclaimers and did not rise to the level of fraudulent misrepresentation.

■ Second, the Ledfords knew Hill was unfamiliar with the property. Not only did Hill tell the Ledfords he was unsure of the details of the property because Bischoff had just received the listing from the Bank, but the only reason they originally went to the property was to allow Hill to place a "for sale" sign in the yard. Additionally, Hill did not know the asking price of the property, and had to return to the Bischoff office to learn the price.

> When both parties are dealing at arm's length and one party, in spite of the facts well known to him, deliberately chooses to believe statements to the contrary, he closes his eyes to the truth and deliberately takes a chance. It then cannot be said that he was injured in law. All that can be said is that he gambled and lost.

*Plymale, supra*, at 761 (quotation and citation omitted). In sum, the Ledfords admitted they knew Hill was unfamiliar with the property, both through his statements and his actions. They have failed to show reliance on Hill's equivocal statements because their actions did not amount to reliance, but merely to gambling. When people such as Hill and the Ledfords "stand mentally on equal footing, and in no fiduciary relation, the law will not protect one who fails to exercise common sense and judgment." *Id.* at 762 (citation omitted). The trial court erred in denying Bischoff's

motion for summary judgment based on the evidence.

## II

The trial court also erred in denying Bischoff's motion for summary judgment because principles of agency law mandated judgment for Bischoff in light of the judgment for the Bank.

■ It is beyond dispute that an injured party may bring an action against both an agent and his principal to recover for torts committed by the agent. *See Block v. Haseltine* (1892), 3 Ind.App. 491, 29 N.E. 937; *Restatement (Second) of Agency* § 359C (1958). It is equally well established that a principal is liable for any misrepresentations of his agent undertaken within the scope of the agency, whether or not the principal has knowledge of the fraud. *Wolfe v. Pugh* (1884), 101 Ind. 293, 304. Of course, the principal may avoid liability by submitting to a rescission of the contract or otherwise making the injured party whole, but acceptance of the benefits of the misrepresentation leads to liability.[1] *Id.* The rule is grounded in sound notions of policy, for, as between two innocent parties, it is preferable to place the burden of an agent's fraud on the principal who hired him rather than on a third party stranger to the agency relationship. *Id.; see also Aiello v. Ed Saxe Real Estate, Inc.* (1985), 508 Pa. 553, 499 A.2d 282. Moreover, allowing principals to accept the benefits of their agents' fraudulent transactions without liability for the fraud could not but lead to an increase in such transactions.[2]

■ The logic of *Wolfe* is inescapable. The principal is liable for the misrepresentations of the agent. It follows that there can be no judgment on the merits for the principal if the agent has engaged in misrepresentation: accordingly, a judgment on

---

**1.** Misrepresentations undertaken beyond the scope of authority will also result in the principal's liability if the principal ratifies the acts underlying the misrepresentations. *Vernon Fire & Cas. Ins. Co., supra, on reh'g.,* 152 Ind.App. at 713–14, 287 N.E.2d at 776–77.

**2.** The rule that the principal is liable for the misrepresentations of its agent is virtually universal. The *Aiello* decision contains an exhaustive list of cases applying the rule. *Aiello, supra,* 508 Pa. at 562–63, 499 A.2d at 287–88.

the merits for the principal is a judgment that no misrepresentation has occurred.[3] Absent misrepresentation in a case founded on misrepresentation, the plaintiff has failed to meet its burden and the agent is entitled to judgment as a matter of law.

In the present case, the Ledfords alleged misrepresentation. The Bank, as principal, moved for summary judgment on the ground that Hill had made no misrepresentations, and the trial court granted the motion. Under these circumstances, the trial court's action was the equivalent of a judgment for the agent Bischoff, and Bischoff was entitled to summary judgment because the trial court judged Hill had made no misrepresentations.

For the foregoing reasons, the judgment of the trial court is reversed, and the cause is remanded with instructions to enter summary judgment in favor of Bischoff.

ROBERTSON and CONOVER, JJ., concur.

---

**3.** This rule applies only when, as the Ledfords pleaded here, the agents alleged misrepresentation occurred within the scope of the agent's authority. If an agent acting beyond the scope of his actual or apparent authority deceives a third party, the principal could easily obtain a judgment on the merits by proving he did not ratify the agent's acts. In that situation, judg-ment for the principal would, of course, not mandate judgment for the deceiving agent. *See e.g., Allegheney Mut. Cas. Co. v. Franklin* (1987), 513 N.E.2d 658; *Grosam v. Laborers' Intern. Union of North America* (1986), Ind.App., 489 N.E.2d 656, *trans. denied; Gary Hobart Savings & Loan Ass'n v. Strong* (1934), 99 Ind.App. 422, 190 N.E. 373.