OIL SUPPLY COMPANY, INC., Appellant (Plaintiff Below),

v.

HIRES PARTS SERVICE, INC., d/b/a Hires Auto Parts, Appellee (Defendant Below).

No. 02S05–9705–CV–316.

Supreme Court of Indiana.

March 29, 2000.

Rick L. Sprunger, Berne, Indiana, Attorney for Appellant.

Eric E. Snouffer, Fort Wayne, Indiana, Attorney for Appellee.

SHEPARD, Chief Justice.

William Dolin worked as an intermediary in the world of oil and auto products. Being indebted to two different businesses, he finessed robbing Peter to pay Paul and then apparently evaporated. His two victims have been litigating who should bear the burden of doing business with Dolin.

### Statement of Facts

In the summer of 1988, William Dolin was indebted to Oil Supply Company, Inc. in an undetermined, but substantial, amount of money. In an effort to get paid by Dolin on this outstanding debt, Oil Supply entered into an agreement with Dolin under which Dolin would arrange sales through Oil Supply. The profits of these sales would be split between Oil Supply and Dolin. A percentage of Dolin's share of the profits would be credited toward Dolin's debt with Oil Supply.[1]

---

**1.** Stipulated Exhibit "C" contains the following note written by Craig Dyas, the general manager of Oil Supply, to Dolin, stating the terms of the agency relationship they were creating for the cancellation of Dolin's debt to Oil Supply:

6 September, 1988
Bill,

During the fall of 1988, Dolin was also indebted to Hires Parts Service, Inc., d/b/a Hires Auto Parts, in the amount of $28,080. To remedy this debt, Dolin represented to Hires in October 1988 that he had a load of 720 cases of antifreeze that he would ship to Hires in exchange for release of his debt to Hires. Hires agreed to this arrangement.

Dolin telephoned Craig Dyas, general manager of Oil Supply, and said, "Craig, I got an order here, Hires Automotive, Fort Wayne, Indiana. Ship them 720 cases of antifreeze, no matter what it is." Oil Supply ran a financial check on Hires but did not contact Hires to confirm the sales order.

Oil Supply sent 720 cases of antifreeze to be delivered to Hires. Hires received the antifreeze on November 7, 1988; an agent of Hires signed and dated a document indicating that Oil Supply was the shipper of the antifreeze. Prior to this transaction, Oil Supply and Hires were unaware of each other's existence.

Hires has neither paid for nor returned the 720 cases of antifreeze, despite demands by Oil Supply. Oil Supply sued Hires for the cost of the antifreeze, $28,900.80, plus prejudgment interest. The trial court awarded Oil Supply the value of the antifreeze and set off the debt Dolin owed Hires, leaving a judgment of $820.80. It declined to award prejudgment interest. Oil Supply appealed. The Court of Appeals largely affirmed, although it ordered prejudgment interest. *Oil Supply Co. v. Hires Parts Service, Inc.*, 670 N.E.2d 86 (Ind.Ct.App.1996).

## Statement of the Issue

Oil Supply raised two issues on appeal: (1) Whether Oil Supply is bound by the unauthorized actions of an undisclosed agent, and (2) whether the trial court should have applied the doctrine of ratification to the facts of this case. (Appellant's Br. at 1.) Because our treatment of the first issue is dispositive, we do not address the second.

## Standard of Review

Pursuant to Hires' request, and Indiana Trial Rule 52, the trial court in this case entered Findings of Fact and Conclusions of Law. We apply a two-tiered standard to review the court's entry. "We determine whether the evidence supports the findings and the findings support the judgment." *Chidester v. City of Hobart*, 631 N.E.2d 908, 910 (Ind.1994). In deference to the trial court's proximity to the issues, "we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment." *Id.* (citing *Indianapolis Convention & Visitors Ass'n v. Indianapolis Newspapers, Inc.*, 577 N.E.2d 208 (Ind. 1991)). We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. *Id.* Challengers thus labor under a heavy burden, but one which may be overcome by showing that the trial court's findings are clearly erroneous. Ind. Trial Rule 52(A); *Chidester*, 631 N.E.2d at 909–10.

## The Law of Agency

An agent is one who acts on behalf of some person, with that person's consent and subject to that person's control. *See Dept. of Treasury v. Ice Service, Inc.*, 220 Ind. 64, 41 N.E.2d 201 (Ind.1942) (citing Restatement (Second) of Agency § 1(1) (1958)). If a party to a transaction has no notice that the agent is acting for a principal, the party for whom he acts is

Below is a recap of the sales which you arranged through [Oil Supply] through 25 August, 1988. I believe you will find everything as we have discussed. Through this date the split may or may not have been exactly 60/40, however, from this point forward we will forward you a check on or about the 25th of the month, equivalent to 40% of the profit which you make. The balance will be applied to your account until it is slick. At that point we will begin operating at 50/50 from my acquisition cost.

Well PAL, I look forward to the day when this is behind us and its [sic] all blue sky.

craig

(R. at 239.)

called an undisclosed principal, and the relationship between the agent and the principal is called an undisclosed agency. Restatement (Second) of Agency § 4(3) (1958). Both the trial court and the Court of Appeals concluded that an undisclosed agency existed between Dolin, the agent, and Oil Supply, the principal. (R. at 373–74); *Oil Supply,* 670 N.E.2d at 90. We agree.

 Those courts also concluded that Hires was entitled to set off Dolin's debt against the value of the goods shipped by Oil Supply, relying heavily on the well-recognized rule of agency law outlined in 3 American Jurisprudence 2d § 341:

> [O]ne who contracts with the agent of an undisclosed principal, supposing that the agent is the real party in interest, and not being chargeable with notice of the existence of the principal, is entitled, if sued by the principal on the contract, to set up any defenses and equities which he could have set up against the agent had the latter been in reality the principal suing on his own behalf.

(R. at 374); *Oil Supply,* 670 N.E.2d at 89. While we agree that this established rule informs the case, we think our colleagues have drawn the wrong conclusion drawn from it. Both courts focused on Hires' assumption "that the agent [wa]s the real party in interest." We think the case turns instead on the fact that Hires cannot set up its defense against Oil Supply unless it is "not . . . chargeable with notice of the existence of the principal."

When Hires received the cases of antifreeze as payment of Dolin's antecedent debt, it signed shipping documents that made no mention of Dolin at all, but declared instead that the goods were from Oil Supply. (R. at 249.) This declaration should have alerted Hires to question the provenance of the cases and the nature of the transaction. Of course, the goods belonged to Oil Supply, who intended to sell them to Hires rather than pay on Dolin's pre-existing debt.

Not only did Hires have *an* opportunity to question the transaction, it had *the last* opportunity to do so before the matter was complete and Dolin absconded, leaving the parties to sort out who must bear the loss. Hires, therefore, was chargeable with notice of the existence of Oil Supply as the principal. As a result, Hires is not entitled to assert the defense it would have had against the agent, Dolin, in this lawsuit brought by the principal, Oil Supply.

This conclusion is bolstered by section 306 of the Restatement (Second) of Agency, which reads, in pertinent part:

> (2) If the agent is authorized only to contract in the principal's name, the other party does not have set-off for a claim due him from the agent unless the agent had been entrusted with the possession of chattels which he disposes of as directed or unless the principal had otherwise misled the third person into extending credit to the agent.

The illustration provided after that section is also helpful:

> 1. A is authorized by P to contract to sell to T in P's name goods of which A does not have possession. A sells the goods in his own name and causes them to be delivered to T. At this time A owes T $500. In an action by P against T, T may not set off the claim which he has against A.

We find nothing in the record to support the notion that Dolin was authorized to conceal the existence of Oil Supply as his principal. In fact, that Oil Supply's name was printed on the shipping receipt suggests the contrary—that Oil Supply had no desire to hide its existence. Section 306(2) prevents Hires from claiming a right of set off in this action by Oil Supply.

### "Deterring the Evil Gwynnes"

The statements and restatements of the law of agency may obscure the effect of law on commercial dealings. Indeed, even distinguished courts sometimes dispose of cases without pausing to consider the effects that common law choices have on

commercial problems like absconding agents. *See, e.g., Phelps v. McQuade,* 220 N.Y. 232, 115 N.E. 441 (N.Y.1917) (summary resolution of fall-out from jewelry transaction by a scoundrel, Walter Gwynne, impersonating Baldwin Gwynne, "a man of financial responsibility.").

█ Our Court of Appeals has suggested a more complete understanding of this rule of law. In resolving the present case, the court relied on *Bischoff Realty, Inc. v. Ledford,* 562 N.E.2d 1321 (Ind.Ct.App. 1990), which observed that the burden of an agent's fraud ought rightly be placed "on the principal who hired him rather than on a third party stranger to the agency relationship." *Oil Supply,* 670 N.E.2d at 91 (citing *Bischoff,* 562 N.E.2d at 1324). The object of agency law in cases such as the one before us should be the deterrence of absconding agents. Commerce will be facilitated where the law allocates burdens to those best able to thwart the absconders.

To be sure, principals are generally in a better position to prevent potential fraud by their agents than are buyers. Oil Supply could have prevented this situation by making a confirmation, or by closer supervision of its agent Dolin. The Court of Appeals was correct to characterize these failings as neglectful. *Oil Supply,* 670 N.E.2d at 91.

On the other hand, Hires might just as easily prevented the defalcation by taking the time to ponder why some company it had never heard of had just deposited a truckload of antifreeze on its doorstep.

Because Hires was chargeable with notice of the existence of Oil Supply as Dolin's principal before it accepted the goods, and because Hires had the last opportunity to prevent the loss before the transaction was complete, Hires should bear the loss.

This disposition has the added benefit of making it more difficult for the Dolins of the world to shift debt by fraudulent means. If Hires could keep the antifreeze without paying for it, bad agents could more easily pay off debts to businesses like Hires by shifting them to those like Oil Supply.[2] Dolin would owe Oil Supply roughly $28,000 in addition to the amount he already owed at the time he absconded. Indebtedness to Oil Supply rather than Hires could well be preferable to Dolin, and he should not be empowered to shift debt from one creditor to another by way of fraud.

We conclude that Hires was not entitled to set off its Dolin debt in the lawsuit brought by Oil Supply.[3]

## Conclusion

Accordingly, we affirm the trial court's finding for Oil Supply on the value of its antifreeze and reverse with respect to the set-off of Dolin's debt.

---

2. That Hires "paid" for the antifreeze by releasing Dolin's personal antecedent debt is, in itself, pertinent. Whether the recipient of the goods taken in cancellation of a pre-existing debt can rightly be termed a good faith purchaser for value or a buyer in the ordinary course of business is a matter on which some courts disagree. *Compare, e.g., Fifth Third Bank v. Bentonville Farm Supply,* 629 N.E.2d 1246 (Ind.Ct.App.1994) (satisfaction of pre-existing debt does not constitute buying for new value), *trans. denied* ; *Smith v. Autocar Sales and Service Co.,* 107 Ind.App. 244, 20 N.E.2d 188 (1939) (satisfaction of antecedent debt does not constitute paying value); *and Mossler Acceptance Co. v. Johnson,* 109 F.Supp. 157 (W.D.Ark.1952) (cancellation of pre-existing debt is not consideration sufficient to support claim of bona fide purchaser

for value) *with Knapp v. First Nat'l Bank & Trust Co. of Oklahoma City,* 154 F.2d 395 (10th Cir.1946) (pre-existing debt constitutes value); *Farmers Livestock Exchange of Bismarck, Inc. v. Ulmer,* 393 N.W.2d 65 (N.D. 1986) (total or partial satisfaction of pre-existing claim within definition of value); *and B & P Lumber Co. v. First Nat'l Bank of Atlanta,* 147 Ga.App. 762, 250 S.E.2d 505 (Ga.App. 1978) (satisfaction of pre-existing debt constituted value for purchase).

3. The Court of Appeals correctly upheld Oil Supply's pre-judgment interest claim. *Oil Supply,* 670 N.E.2d at 94. We summarily affirm on this point. Ind. Appellate Rule 11(B)(3).

DICKSON, SULLIVAN, and RUCKER, JJ., concur.

BOEHM, J., concurs with separate opinion, in which DICKSON, J., joins.

BOEHM, Justice, concurring.

I agree with the Court's analysis of the appropriate rules of agency law. I also believe that the case can be resolved by a somewhat simpler analysis.

Dolin, the middleman, perpetrated a fraud on both parties. Both parties were entirely innocent, at least until the goods arrived at Hires' loading dock with indications that they came from Oil Supply, not from Dolin, and perhaps thereafter as well. Under these circumstances, each party should be able to rescind the transaction as based on fraud and perhaps also mutual mistake of fact. If that were done, the goods would remain the property of Oil Supply and both Oil Supply and Hires would be left with their preexisting uncollectable debts from Dolin.

If, as turned out to be the case, the transaction stands, value has been given and received on both sides. Wittingly or not, Hires chose to keep the goods and received value from Oil Supply for which Hires should pay. I see no reason why this transaction should shift the preexisting losses from one innocent party to another. That is the result reached in the trial court and the Court of Appeals by permitting Hires to wipe out its bad receivable from Dolin at Oil Supply's expense. I therefore reach the same result as the majority for that reason as well.

DICKSON, J., concurs.