Lori A. KREIGHBAUM,
Appellant–Plaintiff,

v.

FIRST NATIONAL BANK & TRUST, Jon Bobbit & Alan Hazelrigg As Loan Officers for First National Bank & Trust, Brian Hazelrigg, Kevin Passo and Terry Smith, as Agents for First National Bank & Trust, and Jackie Fulkerson, in her individual capacity as Seller, Appellees–Defendants.

No. 77A05–0202–CV–92.

Court of Appeals of Indiana.

Oct. 10, 2002.

David J. Colman, Elizabeth Ann Cure, Bloomington, IN, for Appellant.

J. David Roellgen, Vincennes, IN, for Appellee, Brian Hazelrigg.

Timothy E. Fears, Terre Haute, IN, for Appellee, First National Bank & Trust.

## OPINION

MATHIAS, Judge.

Lori Kreighbaum ("Kreighbaum") sued Jackie Fulkerson ("Fulkerson"), First National Bank & Trust, and several of its agents for fraud and breach of fiduciary duty in connection with her purchase of Fulkerson's home. The Bank and one of its agents filed motions for summary judgment, which were granted on October 12, 2001. Kreighbaum then filed a motion for final judgment, which was granted on November 8, 2001.

On November 13, 2001, the Bank filed a motion to correct error arguing that the October 12, 2001 order was an appealable final order. The trial court granted the Bank's motion and vacated its November 8, 2001 order entering a final judgment. Kreighbaum appeals raising two issues, which we restate as:

I. Whether the trial court's October 12, 2001 order granting summary judgment in favor of the Bank and Brian Hazelrigg was an appealable final order; and,

II. Whether the trial court erred when it granted summary judgment in favor of the Bank and Brian Hazelrigg.

We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

### Facts and Procedural History

The facts most favorable to the nonmovant are that on or about February 23, 1998, Kreighbaum met with Fulkerson to discuss a house owned by Fulkerson, for which Fulkerson was attempting to find a tenant. However, during their discussion Fulkerson told Kreighbaum that she desired to sell the property and asked Kreighbaum if she would be interested in buying it. Kreighbaum told Fulkerson that she did not have funds to do so, but Fulkerson indicated that Kreighbaum should discuss the matter with loan officers at First National Bank ("the Bank"), which was Fulkerson's previous place of employment. Kreighbaum did not know that Fulkerson's home had been listed previously for sale with a real estate agency, and that Fulkerson had been unable to sell the home due to extensive fire damage to the rafters and the roof. Fulkerson never disclosed this information to Kreighbaum.

Per Fulkerson's suggestion, Kreighbaum discussed the matter with the vice-president of the Bank, Jon Bobbit, who told Kreighbaum that she would qualify for 100% financing with a FMHA loan and advised her to buy the house. Thereafter, on February 25, 1998, Kreighbaum signed an "Offer to Purchase" the property, which was provided by Fulkerson. The purchase price was $55,000. Kreighbaum then returned to the Bank and met with loan

officers Jon Bobbit and Alan Hazelrigg, who told her that they would be responsible for all applications, paperwork, inspections, and appraisals.

Brian ·Hazelrigg, Alan Hazelrigg's son, was hired by the Bank to do an appraisal of the property. The appraisal made reference to the attic, but did not mention the condition of the rafters or roof. Loan officers Bobbit and Alan Hazelrigg then hired Kevin Passo to perform an inspection of the property. The one and one-half page inspection report mentioned evidence of fire damage to the rafters, but stated that "[It] [s]eems to be surface damage to rafters only. All rafters are solid." Appellant's App. pp. 27–28. The inspection report also stated that the electrical system was in satisfactory condition. *Id.*

Prior to the closing, loan officers Bobbit and Alan Hazelrigg informed Kreighbaum that FMHA would require that certain repairs would be made to the house or at least that the funds would be escrowed for such repairs before financing would be approved. Therefore, Bobbit and Alan Hazelrigg hired Terry Smith, Fulkerson's son, to provide an estimate for the repair to the rafters and roof of the house. Smith estimated the repairs at $2,250. Appellant's App. p. 29. Financing with an FMHA loan was approved for the full purchase price of the house plus an additional $2,250 in escrow for the estimated repair to the roof. On September 4, 1998, the sale of the house to Kreighbaum was completed.

On December 28, 1998, Kreighbaum smelled smoke in her house and called the Sullivan Fire Department. There was no fire, but an abnormal amount of heat was detected around a light fixture. Appellant's App. p. 37. The Fire Department recommended that Kreighbaum have her

electrical system inspected, which she did. The inspection revealed several electrical code violations. Kreighbaum also had the rafters and roof inspected, after both the Fire Department and the electrical inspector mentioned the evidence of fire damage to her. That inspection revealed that Fulkerson's previous repairs to the rafters after the fire were substandard and that the rafters and roof needed to be replaced. The repairs were estimated at $26,554.35. Appellant's App. p. 39.

On September 1, 2000, Kreighbaum filed a complaint for fraud and breach of fiduciary duty naming as defendants the Bank, Jon Bobbit and Alan Hazelrigg, as Loan Officers for the Bank,[1] Brian Hazelrigg, Kevin Passo, and Terry Smith, as agents for the Bank, and Fulkerson, in her individual capacity as seller. Appellant's App. p. 1. Fulkerson and Passo filed for bankruptcy and proceedings were stayed as to them.

Both the Bank and Brian Hazelrigg filed motions for summary judgment. On October 12, 2001, the trial court entered an order granting both motions for summary judgment. On November 7, 2001, Kreighbaum filed a motion for final judgment, which was granted the next day. On November 13, 2001, the Bank filed a motion to correct error arguing that the October 12, 2001 order granting summary judgment was an appealable final order. Brian Hazelrigg also filed a motion contending that any final judgment should be made *nunc pro tunc* as of October 12, 2001. On November 20, 2001, Kreighbaum filed a notice of appeal. Brian Hazelrigg then filed a response to Kreighbaum's notice of appeal contending that Kreighbaum's notice of appeal should have been filed no less than thirty days after the October 12, 2001 order, and therefore, her

1. No appearance was ever entered for either Jon Bobbit or Alan Hazelrigg.

notice of appeal was untimely and should be dismissed. On January 4, 2001, the trial court issued an order granting the Bank's motion to correct error finding that the entry of summary judgment was a final judgment, and it vacated its prior November 8, 2001 entry of final judgment. Kreighbaum then filed a notice of appeal on January 14, 2002.[2]

## I. Timeliness of Kreighbaum's Appeal

■ Kreighbaum argues that the trial court erred when it vacated its November 8, 2001 order of final judgment and granted the Bank's Motion to Correct Error finding that the "[e]ntry of Summary Judgment on October 12, 2001, was a Final Judgment." Appellant's App. p. 72. The Bank and Brian Hazelrigg argue that the October 12, 2001 order was an appealable final order because it disposed of all issues as to all parties.

Indiana Appellate Rule 2(H) provides in pertinent part:

A judgment is a final judgment if:

(1) it disposes of all claims as to all parties;

(2) the trial court in writing expressly determines under Trial Rule 54(B) or Trial Rule 56(C) that there is no just reason for delay and in writing expressly directs the entry of judgment (i) under Trial Rule 54(B) as to fewer than all the claims or parties, or (ii) under Trial Rule 56(C) as to fewer than all the issues, claims or parties[.]

Trial Rule 54(B) provides:

A judgment as to one or more but fewer than all of the claims or parties is final when the court in writing expressly determines that there is no just reason for delay, and in writing expressly directs

entry of judgment, and an appeal may be taken upon this or other issues resolved by the judgment; but in other cases a judgment, decision or order as to less than all the claims and parties is not final.

Also, Trial Rule 56(C), which addresses the procedures for motions for summary judgment, includes provisions nearly identical to those in Trial Rule 54(B).

Kreighbaum argues that the October 12, 2001 judgment was an order granting summary judgment to less than all of the parties. The Bank and Brian Hazelrigg contend that all defendants named in the complaint were sued as agents of the Bank, with the exception of Fulkerson, against whom the proceedings were stayed; therefore, the order granting their motions for summary judgment disposed of all claims as to all parties. They argue that Kreighbaum herself recognized this fact in her November 7, 2001 motion for final judgment, which states:

1. On October 12, 2001 this Court entered an Order granting Summary Judgment in favor of Defendant First National Bank & Trust and Brian Hazelrigg as agent for First National Bank & Trust. ,

2. Jackie Fulkerson filed bankruptcy and was discharged from the case by an order of the Bankruptcy Court.

3. All other Defendants were sued solely as the agents for First National Bank & Trust.

4. Summary Judgment in favor of First National Bank & Trust is, in effect, a final judgment in this case.

Appellant's App. p. 58.

In *Bischoff Realty, Inc. v. Ledford,* 562 N.E.2d 1321 (Ind.Ct.App.1990), purchasers

---

**2.** Both the Bank and Brian Hazelrigg filed motions to dismiss Kreighbaum's notice of appeal with our court. The motions were

denied due to the confusion in the trial court and because the case had subsequently been fully briefed.

of real estate sued the seller, Merchants Bank, and Bischoff Realty, as the seller's agent, alleging that material misrepresentations of fact were made by a Bischoff agent, which they claimed they relied upon to their detriment. *Id.* at 1323. The Bank moved for summary judgment, which was granted. Bischoff then filed a motion for summary judgment and argued that the principal's discharge mandated the agent's discharge. *Id.* The trial court denied the motion. *Id.* On appeal, our court held that the trial court erred when it denied Bischoff's motion for summary judgment "because principles of agency law mandated judgment for Bischoff in light of the judgment for the Bank." *Id.* at 1324. Our court noted that

> [t]he principal is liable for the misrepresentations of the agent. It follows that there can be no judgment on the merits for the principal if the agent has engaged in misrepresentation: accordingly, a judgment on the merits for the principal is a judgment that no misrepresentation occurred.

We then stated that the trial court's grant of summary judgment in favor of the Bank "was the equivalent of a judgment for the agent Bischoff." *Id.* at 1325. *See also Mid–Continent Paper Converters, Inc. v. Brady, Ware & Schoenfeld, Inc.,* 715 N.E.2d 906, 909 (Ind.Ct.App.1999) (noting that "it is well established that the actions of employees and agents of a corporation are attributable to the corporation, when the actions are done within the scope of employment").

In this case, each individual defendant remaining was sued solely in his capacity as an agent (or employee) of the Bank. Under the holding of *Bischoff,* it is clear

that had the defendants in this case filed motions for summary judgment, the trial court would have been required to grant them. However, other than the Bank and Brian Hazelrigg, those defendants did not file motions for summary judgment, and the trial court did not enter judgment in their favor as it could have done under Trial Rule 56(B). Therefore, Kreighbaum properly filed a motion for final judgment and her notice of appeal was timely filed from the trial court's entry of final judgment on November 8, 2001.[3]

## II. Summary Judgments

### A. *Standard of Review*

Kreighbaum also argues that the trial court erred when it granted the Bank's and Brian Hazelrigg's motions for summary judgment. Our standard of review of a summary judgment motion is the same standard used in the trial court:

> Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. The review of a summary judgment motion is limited to those materials designated to the trial court. We must carefully review decisions on summary judgment motions to ensure that the parties were not improperly denied their day in court.

*Tom–Wat, Inc. v. Fink,* 741 N.E.2d 343, 346 (Ind.2001) (citations omitted). "A party seeking summary judgment bears the burden of showing the absence of a factual issue and his entitlement to judgment as a matter of law." *Harco, Inc. of Indianapo-*

---

**3.** We are baffled by the trial court's decision to vacate its November 8, 2001 order of final judgment, potentially denying Kreighbaum's right to appeal, after she properly sought certification pursuant to Trial Rules 54(B) and 56(C) and relied on the trial court's ruling to perfect her appeal.

lis v. *Plainfield Family Dining Assoc.*, 758 N.E.2d 931, 937 (Ind.Ct.App.2001) (citation omitted). All pleadings, affidavits, and testimony are construed liberally and in the light most favorable to the nonmoving party. *May v. Frauhiger*, 716 N.E.2d 591, 594 (Ind.Ct.App.1999).

For summary judgment purposes, a fact is "material" if it bears on ultimate resolution of relevant issues. *Yin v. Soc'y Nat'l Bank Indiana*, 665 N.E.2d 58, 64 (Ind.Ct.App.1996), *trans. denied.* "[A]ny doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party." *Am. Mgmt., Inc. v. MIF Realty, L.P.*, 666 N.E.2d 424, 428 (Ind.Ct.App.1996). "Even if it appears that the nonmoving party will not succeed at trial, summary judgment is inappropriate where material facts conflict or undisputed facts lead to conflicting inferences." *Link v. Breen*, 649 N.E.2d 126, 128 (Ind.Ct.App.1995), *trans. denied.*

## B. *The Bank's Summary Judgment Motion*

In her complaint, Kreighbaum alleged that the Bank committed fraud and breach of its fiduciary duty to Kreighbaum when it deliberately failed to disclose the defects in the rafters, roof, and electrical system in the house. In its motion for summary judgment, the Bank argued that Kreighbaum failed to meet her burden of proving the necessary elements to establish actual or constructive fraud. The Bank also alleged that there was no fiduciary relationship between itself and Kreighbaum, and therefore, the Bank owed no duty to her.

The law is well-settled in Indiana that "the mere existence of a relationship between parties of bank and customer or depositor does not create a special relationship of trust and confidence." *Huntington Mortgage Co. v. DeBrota*, 703 N.E.2d 160, 167 (Ind.Ct.App.1998) (citations omitted). Generally, "[m]ortgages do not transform a traditional debtor-creditor relationship into a fiduciary relationship absent an intent by the parties to do so." *Id.* (citation omitted). Unless special circumstances exist, a lender does not owe a fiduciary duty to a borrower. *Id.* (citation omitted). However, "[w]here a relationship of trust and confidence exists between parties, equity will act to protect it and to prevent the party owing the duty from profiting by its breach." *Peoples Trust Bank v. Braun*, 443 N.E.2d 875, 879 (Ind.Ct.App.1983).

> "Although the existence of a confidential relationship depends upon the facts of each case, it can be generally stated that a confidential relationship exists whenever confidence is reposed by one party in another with resulting superiority and influence exercised by the other. Not only must there be confidence by one party in the other, the party reposing the confidence must also be in a position of inequality, dependence, weakness, or lack of knowledge. Furthermore, it must be shown that the dominant party wrongfully abused the confidence by improperly influencing the weaker so as to obtain an unconscionable advantage."

*DeBrota*, 703 N.E.2d at 167 (quoting *Braun*, 443 N.E.2d at 879 (quoting *Hunter v. Hunter*, 152 Ind.App. 365, 372, 283 N.E.2d 775, 779 (1972))). "Whether such relationship exists is essentially a question of fact." *Paulson v. Centier Bank*, 704 N.E.2d 482, 490 (Ind.Ct.App.1998), *trans. denied.*

Kreighbaum argues that the Bank was not entitled to summary judgment because a genuine issue of material fact exists as to whether she had a fiduciary relationship with the Bank. In her affidavit, submitted as designated evidence, Kreighbaum stated that Jackie Fulkerson

desired to sell the home she had listed for rent and asked Kreighbaum if she was interested in buying it. Kreighbaum also made the following statements:

3. I told her that I did not have any money, and she told me to go talk to her friends at First National Bank & Trust.

4. I went to First National Bank & Trust and spoke with Jon Bobbit who was the vice president of the bank at that time.

5. I told him at that time that I did not have any money and no experience with buying a house.

6. Jon Bobbit told me that I would qualify for an FMHA loan of 100% financing and that I should go ahead and buy the house rather than rent it.

7. I met with Jackie Fulkerson on February 25, 1998, at a truck stop near Carlisle Prison where I was working and she gave me the Offer to Purchase, . . . which I signed.

8. After I signed the Offer to Purchase, I went back to First National Bank where Jon Bobbit and Alan Hazzlerigg told me that they would take care of everything for me, that I would have to do nothing, and that they would arrange for all of the necessary requirements to get the loan.

9. I told them at the time that I knew nothing about buying a home, and they said that that was alright be-

cause they could do everything for me.

Appellant's Supp.App. pp. 147–48.

Kreighbaum also submitted the affidavit of Kathy Kaufman, who was married to Fulkerson's son, Terry Smith, when the sale of the house took place. In her affidavit, Kaufman stated that prior to the date that Kreighbaum made an offer to purchase the house, she was present when Fulkerson told Alan Hazelrigg that there was a problem with the roof of the house. She was also present when Fulkerson and Smith had a conversation with Hazelrigg "about how to cover the roof problem because they could not afford to take the roof off and replace it." Appellant's Supp.App. pp. 149–50. Although the Bank denies that it had a fiduciary relationship with Kreighbaum and states that its first contact with Kreighbaum occurred after she had executed the offer to purchase, we agree with Kreighbaum that a genuine issue of material fact exists as to whether she had a fiduciary relationship with the Bank.

Furthermore, a genuine issue of material fact exists with regard to whether the bank committed constructive fraud.[4] "Constructive fraud arises by operation of law from a course of conduct which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud." *Marathon Oil Co. v. Collins,* 744 N.E.2d 474, 480 (Ind.Ct.App.2001) (quoting *Stoll v. Grimm,* 681 N.E.2d 749, 757 (Ind.

---

**4.** We agree with the Bank that Kreighbaum has failed to assert facts that would establish actual fraud. The elements of actual fraud are: "(1) a material representation of past or existing fact which (2) is made with knowledge or reckless ignorance of its falsity (3) which causes reliance to the detriment of the person relying upon it." *Stevens v. Butler,* 639 N.E.2d 662, 666 (Ind.Ct.App.1994), *trans.*

*denied.* Kreighbaum has not asserted any fact that would establish the first element of actual fraud, as she does not assert that the Bank informed her that the roof was in good condition. She claims that the Bank had knowledge and failed to inform her that the roof was extensively damaged, which would establish the second element of constructive fraud.

Ct.App.1997)). The elements of constructive fraud are:

(1) a duty existing by virtue of the relationship between the parties;

(2) a violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when the duty to speak exists;

(3) reliance thereon by the complaining party;

(4) injury to the complaining party as a proximate result of that reliance; and

(5) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Id.* (citation omitted).

As set forth above, a genuine issue of material fact exists as to whether a fiduciary relationship was established between the Bank and Kreighbaum. Kreighbaum has also alleged facts through affidavits and exhibits submitted as designated evidence that could establish the elements of constructive fraud, including evidence that 1) the Bank's officers were aware of the problems with the roof and rafters, 2) after the inspection report revealed some damage to the roof, the Bank hired Fulkerson's son, who was also aware of the roof damage, to prepare an estimate to repair the damage as required by the FHMA loan program, 3) Smith's estimate of $2,250 to repair the damage was inadequate, a fact of which the Bank's officers were aware, and 4) after she was informed of the extensive damage to the roof, she received an estimate for the cost of repair totaling $26,554.35. Appellant's App. pp. 27, 29, 39; Appellant's Supp.App. pp. 147–50.

A genuine issue of material fact exists concerning whether a fiduciary relationship was established between Kreighbaum

and the Bank. Kreighbaum has also alleged facts and designated evidence which could establish constructive fraud. Therefore, construing the facts and all reasonable inferences drawn from those facts in favor of Kreighbaum, as the nonmoving party, the Bank was not entitled to judgment as a matter of law on Kreighbaum's claims of breach of fiduciary duty and constructive fraud.

### C. *Brian Hazelrigg's Summary Judgment Motion*

Brian Hazelrigg was hired by the Bank to conduct an appraisal of the house. As Hazelrigg correctly contends, it is well-settled under Indiana law that an appraisal is an opinion, and therefore is not actionable under a theory of fraud. *See Block v. Lake Mortgage Co., Inc.*, 601 N.E.2d 449, 451 (Ind.Ct.App.1992). "Mere expressions of opinion cannot be the basis for an action in fraud; an action in fraud requires a misrepresentation of material fact." *Id.* "[A]n appraisal of property is not the result of a scientific analysis, but is, rather, a subjective opinion which can and does differ from the next appraisal even though both may be based on current real estate market trends." *Id.*

Hazelrigg also argues that he did not have a fiduciary relationship with Kreighbaum and points to the fact that he was hired by the Bank to do an appraisal as required by the lender and submitted the appraisal to the Bank; therefore, there was no privity of contract between himself and Kreighbaum. Br. of Appellee Hazelrigg at 6. We agree. Kreighbaum never met with Brian Hazelrigg and, in fact, does not maintain that she even reviewed the appraisal prior to closing.

Because appraisals are not actionable under a theory of fraud and Kreighbaum failed to designate any evidence that would tend to establish a genuine issue of material fact regarding whether she had a fidu-

ciary relationship with Brian Hazelrigg, the trial court did not err when it granted Brian Hazelrigg's motion for summary judgment.

### Conclusion

The trial court's October 12, 2001 order granting the Bank's and Brian Hazelrigg's motions for summary judgment was not a final appealable order and Kreighbaum's notice of appeal was timely filed. Therefore, the trial court erred when it granted the Bank's motion to correct error. The trial court also erred when it granted the Bank's motion for summary judgment because genuine issues of material fact exist. However, the trial court did not err when it granted Brian Hazelrigg's motion for summary judgment.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

BARNES, J., and KIRSCH, J., concur.