## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 27 2015, 9:02 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Steven A. Gustafson
The Law Office of Richard R. Fox
New Albany, Indiana

Douglas C. Leatherbury
Salem, Indiana

ATTORNEYS FOR APPELLEE

Mark D. Johnson
Allen & Johnson, LLC
Salem, Indiana
Attorney for Anthony Arnold, Rhonda
Arnold, Daniel Arnold, and Lee Ann Arnold

Mark Clark
Salem, Indiana
Attorney for Mid-Southern Savings Bank,
FSB

# IN THE
# COURT OF APPEALS OF INDIANA

Ronald Miller, d/b/a United Country Washington County Indiana Real Estate, LLC.,

*Appellant-Defendant,*

v.

Anthony Arnold, Rhonda Arnold, Lee Ann Arnold, Daniel Arnold, Mid-Southern Savings Bank, FSB and Washington County Treasurer,

*Appellee-Plaintiff*

October 27, 2015

Court of Appeals Case No.
88A01-1412-MF-551

Appeal from the Washington Circuit Court

The Honorable Larry W. Medlock, Judge

Trial Court Cause No.
88C01-1311-MF-740

**Altice, Judge.**

## Case Summary

Ronald O. Miller, d/b/a United Country Washington County Indiana Real Estate, LLC, (Miller) filed a complaint for breach of conditional land sale contract (the Land Contract) and foreclosure against Anthony, Rhonda, Lee Ann, and Daniel Arnold (collectively referred to as the Arnolds). The Arnolds filed various counterclaims against Miller. Following a two-day bench trial, the trial court found in favor of the Arnolds, releasing them from the Land Contract and entering judgment in their favor in the amount of $19,630.21. Miller filed a motion to correct error and a motion for a new trial "to specifically allow new evidence on the issues of payment made on the Land Contract for principal, interest, real estate taxes and insurance". *Appellant's Appendix* at 177. The trial court denied these motions following a hearing. On appeal, Miller contends that the trial court failed to properly apply the terms of the Land Contract and erred in denying the motion to correct error.

We affirm.

## Facts & Procedural History

Miller purchased the property in question on or about January 15, 2002. Situated on the property was a mobile home in which various members of the Arnold family had lived over the years. Although the details in the record are vague, it appears that Michael Arnold (not a party in this case) had a land

contract with Miller prior to 2004. Michael's parents, Anthony and Rhonda, moved into the mobile home at some point and, on February 23, 2004, entered into the Land Contract with Miller, which was apparently a continuation of Michael's contract. The underlying property was also subject to a mortgage in favor of Mid-Southern Savings Bank (the Bank). Rhonda obtained insurance on the property, and the policy included Miller and the Bank as co-loss payees.

[4] The mobile home burned in 2011 and was a total loss. Thereafter, insurance checks were issued in the amount of $17,000 for loss of the trailer and $8000 for its contents. It took Miller several months to find a replacement mobile home for the property, but the Arnolds continued to make monthly payments on the Land Contract. Miller eventually purchased a replacement from a nearby property for $9900. The Bank provided Miller with the remainder of the funds for the loss of the trailer, totaling $7100. Miller also appears to have received $4000 for loss of personal property (part of the $8000 check) to be used for cleanup of the site.[1]

[5] With the funds remaining after purchasing the mobile home, Miller testified that he paid an additional $100 to the seller, purchased local permits totaling $160, paid $2000 to have the replacement mobile home relocated, spent $1000 for cleanup, and additional funds for materials and setup. The Arnolds disputed the amount of the relocation and cleanup expenses and indicated that

---

[1] Although we have had difficulty finding support in the record for this factual statement, Miller includes this as fact in his appellate brief and does not challenge this specific finding of fact entered by the trial court.

they did most of the cleanup themselves. Miller provided no supporting evidence at trial regarding these additional expenditures.

[6] Anthony and Rhonda moved out of the mobile home around April 2012, and their son and daughter-in-law, Daniel and Lee Ann, assumed Anthony and Rhonda's obligations under the Land Contract. Although Miller did not give written consent for the assignment of the Land Contract, he actively acquiesced in the transfer of Anthony and Rhonda's financial obligations to Daniel and Lee Ann. Miller often came to the property and accepted monthly payments from Lee Ann.

[7] Whereas Anthony and Rhonda had paid the insurance premiums themselves prior to the fire, Miller secured insurance and added $50 per month to Daniel and Lee Ann's payments. Miller testified at trial that he did not know the actual cost of the insurance. Miller also charged the Arnolds for property taxes that remained in his name. Between 2011 and 2013, Miller knowingly provided the Arnolds with false written statements regarding the amount of real estate taxes and insurance actually owed. In total, he overbilled the family $107.25 for insurance and $1647.14 for taxes during this period.

[8] In December 2012 and January 2013, while Lee Ann was hospitalized, Miller allowed the water and electricity to the mobile home to be shut off. He also placed a hold on the utilities, which resulted in the Arnolds being unable to pay to have them restored. As a result, the water pipes in the mobile home burst and caused $2500 in water damage.

[9] Miller refused payments tendered by Lee Ann in October 2013 and all subsequent payments. He then, on November 22, 2013, filed a complaint against the Arnolds for breach of the Land Contract and foreclosure of said contract. Miller amended the complaint twice. The subsequent amendments included the Bank and the Washington County Treasurer as defendants, recognizing their prior liens on the real estate. Thereafter, the Bank filed a counterclaim against Miller to foreclose on its mortgage lien.

[10] Following a two-day bench trial, the trial court issued findings of fact and conclusions of law and entered judgment against Miller on October 15, 2014. Specifically, the court foreclosed on the Bank's lien and entered a judgment of $13,664.81 in favor of the Bank, $17,130.21 in favor of the Arnolds,[2] and $2500.00 (for water damage) in favor of Daniel and Lee Ann Arnold. The court ordered the property to be sold by the Sheriff of Washington County.

[11] On November 13, 2014, Miller filed a motion to correct error and a motion for a new trial "to specifically allow *new evidence* on the issues of payment made on the Land Contract for principal, interest, real estate taxes and insurance". *Appellant's Appendix* at 177 (emphasis supplied). Among the new evidence Miller sought to introduce were spreadsheets prepared by a CPA, a copy of the Arnolds' water statement from October 2013 to March 2014, and his own

---

[2] This amount included $6890 (the difference between the insurance proceeds and the cost of the replacement trailer), $6013 (treble damages for the tax and insurance overcharges, as well as associated attorney fees), and $4228 (the equity acquired by the Arnolds during the Land Contract minus uncollected payments from October 2013 through October 2014).

affidavit. Following a hearing, the trial court denied, in relevant part, the motion to correct error. Miller now appeals, challenging only the judgments entered in favor of the Arnolds.[3] Additional facts will be provided below as needed.

## Discussion & Decision

### I. The Land Contract

[12] Miller contends the trial court imposed obligations on him that were not set out in the Land Contract. He claims these "bogus obligations" included a duty to replace the destroyed mobile home, a duty to pay utility bills, and a duty to account for insurance proceeds. *Appellant's Brief* at 8.

[13] On appeal from a bench trial, this court shall not set aside the trial court's findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. *First Response Servs., Inc. v. Cullers*, 7 N.E.3d 1016, 1021 (Ind. Ct. App. 2014). Where, as here, the trial court has issued findings of fact and conclusions of law, we apply a two-tiered standard of review, determining whether the evidence supports the findings and the findings support the judgment. *Id.* We review for clear error and will reverse only if the findings are unsupported by any evidence or reasonable inferences drawn from the evidence or if the judgment is

---

[3] Miller makes no appellate argument with respect to the judgment entered in favor of the Bank for foreclosure of its mortgage lien. Accordingly, we do not review that portion of the judgment on appeal.

unsupported by the findings and conclusions. *Id.* Although we defer substantially to the trial court's findings of fact, we apply a de novo standard to its conclusions of law. *Id.*

[14] Miller initially argues that the trial court erroneously determined he was required to replace the mobile home when it burned down. Miller claims that he had the option of either using the insurance proceeds for repairs or applying them to the Arnolds' contract debt.

[15] With respect to application of insurance proceeds, the Land Contract expressly provided:

> Except as otherwise may be agreed in writing, any insurance proceeds received as payment for any loss of or damage to the Real Estate covered by Required Insurance shall be applied to restoration and repair of the loss or damage on [sic] fashion as Seller reasonably may require, unless such restoration and repair is not economically feasible or there exists an uncured Event of Default by Purchaser under this Contract on the date of receipt of such proceeds, in either of which events, the proceeds may be applied, at Seller's option, toward prepayment of the Contract Balance, with any excess to be paid to Purchaser.

*Appellant's Appendix* at 30. The clear import of this provision is that any insurance proceeds are to be used for restoration and repair or credited toward the contract balance, with any excess paid to the Arnolds. Here, the evidence favorable to the judgment establishes that Miller used a portion of the insurance

proceeds to replace the mobile home. The trial court did not err in determining that the remaining proceeds should have been credited to the Arnolds.[4]

[16] In a related argument, Miller contends that the trial court erred when it found that the Arnolds were entitled to an accounting of the insurance proceeds. Specifically, Miller challenges findings 11 and 13:

> 11. That Ronald O. Miller never gave the Defendants, Anthony and/or Rhonda Arnold an accounting of the $7,100.00 nor did he give them credit for the funds.
>
> ***
>
> 13. Ronald O. Miller also was provided an insurance check in the amount of $4,000.00 for the contents of the trailer to be used for clean up. Ronald O. Miller never provided accounting for those proceeds.

*Appellant's Appendix* at 14.

[17] Miller asserts that a duty to provide an accounting is fiduciary in nature and can only be imposed on a person whom the law treats as a trustee. In support, Miller cites a trust statute and case, as well as cases involving claims of breach of fiduciary duty and constructive fraud. We find these authorities wholly

---

[4] In passing, Miller asserts that the destruction of the mobile home by the fire was an event of default. Although the Land Contract provides that "[t]he actual or threatened alteration, demolition, or removal of any improvements" is an event of default, a fair reading of this provision is that it applies to intentional acts of the parties. *Appellant's Appendix* at 35. Moreover, the record establishes that Miller did not treat the fire as an event of default in 2011, and he continued the contract for a number of years. His argument, therefore, is disingenuous.

inapposite. Moreover, Miller's focus on the trial court's use of the term "accounting" is clearly misguided. The trial court, here, did not intend to find that a fiduciary obligation existed. Rather, a reasonable reading of the order indicates that the trial court simply found Miller had failed to establish that all of the insurance proceeds were used to replace the mobile home. Indeed, Miller's evidence in this regard was weak and contradicted by the Arnolds. Read in context, these findings are not clearly erroneous.

[18] Next, Miller makes a brief argument that the trial court erred when it imposed a duty on him to pay the utility bills, which remained in his name. He claims, "[n]othing in the contract obliged Miller to pay the Arnolds' utility bills when they were shut off due to the Arnolds' non-payment." *Appellant's Brief* at 12. We, however, do not read the order as requiring Miller to pay the utility bills. The evidence established that Miller not only directed the utility companies to shut off the utilities, despite the Arnolds' payment agreement with the companies, but he also put a hold on the accounts so that the Arnolds could not make payments to the utility companies and have the utilities turned back on. It was the latter directive that caused the damages in question. Miller has failed to establish error in this regard.

[19] With similar brevity, Miller also contends that the trial court erred by failing to find the Arnolds in default and failing to accelerate the contract balance. In this regard, Miller asserts that the Arnolds were not paying the taxes and insurance as required and were behind on their utility bills. We find this to be a request

for us to reweigh the evidence, which we will not do on appeal. *See Oil Supple Co., Inc. v. Hires Parts Serv., Inc.,* 726 N.E.2d 246, 248 (Ind. 2000).

## II. Treble Damages

[20] The Land Contract contained provisions requiring the Arnolds to maintain property insurance and pay real estate taxes. In the event they did not do so, the contract provided that Miller "may pay such taxes or assessments or obtain and maintain such insurance and add costs thereof to the Contract Balance." *Appellant's Appendix* at 30. Miller exercised this option with respect to taxes throughout the contract and with respect to insurance after the fire. He charged the Arnolds $50 per month for insurance, which was more than the actual cost. For the years 2011 through 2013, Miller substantially overbilled the Arnolds for property taxes, collecting more than double the total amount due.

[21] After detailing the facts related to the overcharges, the trial court entered the following finding: "[Miller] knowingly and willingly made false or misleading written statements with the intent to obtain money in excess of the taxes and insurance actually billed."[5] *Id*. at 16. As a result, the court concluded that the Arnolds were entitled to treble damages, as well as attorney fees, pursuant to Ind. Code § 34-24-3-1. The court awarded the Arnolds $6,013.17, "consisting

---

[5] On appeal, Miller does not dispute this specific finding.

of $5,263.17, representing three times the overcharge for taxes and insurance, and reasonable costs and attorney fees of $750.00". *Id*. at 19.

[22] On appeal, Miller argues that I.C. § 34-24-3-1 "was never intended to criminalize contractual disputes." *Appellant's Brief* at 16. He then provides case law addressing actions for conversion, which establishes that money may be the subject of an action for conversion only if it is capable of being identified as a special chattel (*i.e.*, a determinate sum with which the defendant was entrusted to apply to a certain purpose). *See Bowden v. Agnew*, 2 N.E.3d 743, 750-51 (Ind. Ct. App. 2014).

[23] Miller's argument misses the mark because the trial court did not award treble damages based on a finding of conversion.[6] Rather, though not specifically labeled as such, the court determined that Miller committed deception by "knowingly and willingly ma[king] false or misleading written statements with the intent to obtain money in excess of the taxes and insurance actually billed." *Appellant's Appendix* at 16. This finding tracks the language of Ind. Code § 35-43-5-3(a)(2), which defines deception as, among other things, "knowingly or intentionally making a false or misleading written statement with intent to obtain property". Deception, in turn, is one of the property offenses for which an individual who suffers pecuniary loss may bring a civil action for treble damages and fees under I.C. § 34-24-3-1. Miller does not address the trial

---

[6] Conversion is statutorily defined as "knowingly or intentionally exert[ing] unauthorized control over property of another person". Ind. Code § 35-43-4-3(a).

court's finding of deception. Accordingly, he has failed to establish error in regard to the treble damages award.[7]

### III. Motion to Correct Error

[24] Finally, Miller contends that the trial court abused its discretion when it denied his motion to correct error "to which various affidavits and accountings were attached." *Appellant's Brief* at 20. With this new evidence, Miller sought to account for the insurance proceeds and establish that the charges for taxes and insurance were not excessive. He acknowledges that the evidence submitted with his motion was not newly discovered but argues that "given the unfair surprise occasioned by the trial court's rewriting of the contract," the evidentiary submissions should be permitted and a new trial ordered. *Id.* at 22.

[25] We review the denial of a request for a new trial presented by a Trial Rule 59 motion to correct error for an abuse of discretion. *Speedway SuperAmerica, LLC v. Holmes*, 885 N.E.2d 1265, 1270 (Ind. 2008). T.R. 59(A)(1) permits a party to file such a motion to address "[n]ewly discovered material evidence … which, with reasonable diligence, could not have been discovered and produced at trial". Observing Indiana courts' concern for finality of judicial resolutions, our Supreme Court has made clear:

---

[7] Miller expresses surprise that the trial court treated the overcharges as a criminal matter and awarded treble damages. We observe, however, that the Arnolds plainly filed a counterclaim in this respect.

new evidence requires a new trial only when the party seeking relief demonstrates:

> "(1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial."

*Speedway SuperAmerica, LLC,* 885 N.E.2d at 1271 (quoting *Carter v. State*, 738 N.E.2d 665, 671 (Ind. 2000)).

[26] Miller acknowledges that his motion was not based on evidence discovered after the trial. Rather, the evidence submitted with the motion was clearly available at the time of trial. Miller's attempt to attack the trial court's judgment by providing additional evidence that he neglected to present at trial was improper. The trial court properly struck this evidence and denied the motion to correct error.[8]

[27] Judgment affirmed.

---

[8] In his reply brief, Miller raises another argument regarding the denial of his motion to correct error. He claims, "[a]ccepting the findings of the court below at face value, Miller ought to be entitled to a deficiency judgment of $30,549.72". *Appellant's Reply Brief* at 13. He asserts that the trial court's judgment failed to dispose of this matter and left Miller's right to claim offset unclear. Although not persuaded by this argument, we find the issue waived because it was asserted for the first time in Miller's reply brief. *See Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) ("grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived").

Riley, J., and Brown, J., concur.